1    Adam H. Fleischer (*pro hac vice*)
     Mark G. Sheridan (*pro hac vice*)
2    Michael H. Passman (*pro hac vice*)
     BatesCarey LLP
3    191 North Wacker, Suite 2400
     Chicago, IL 60606
4    (312) 762-3100
     afleischer@batescarey.com
5    msheridan@batescarey.com
     mpassman@batescarey.com
6
     Michael K. Johnson (SBN 130193)
7    Lewis Brisbois Bisgaard & Smith LLP
     333 Bush Street, Suite 1100
8    San Francisco, CA 94104
     Attorneys for Plaintiff
9    (415) 362-2580
     michael.johnson@lewisbrisbois.com
10
     Attorneys for Plaintiff
11   WESTPORT INSURANCE CORPORATION

12                    **UNITED STATES DISTRICT COURT**

13                   **NORTHERN DISTRICT OF CALIFORNIA**

14
     **WESTPORT INSURANCE**              )   Case No.  3:14-cv-00312-CRB
15   **CORPORATION,**                    )
                                         )
16              Plaintiff,               )   **PLAINTIFF'S NOTICE OF MOTION AND**
                                         )   **MOTION FOR PARTIAL JUDGMENT ON**
17        vs.                            )   **THE PLEADINGS AS TO COUNTS I-VI**
                                         )   **AND X; MEMORANDUM OF POINTS**
18   **NORTHERN CALIFORNIA RELIEF,**     )   **AND AUTHORITIES**
     **a/k/a NORTHERN CALIFORNIA**       )   **[F.R.C.P. 12(c)]**
19   **REGIONAL LIABILITY EXCESS**       )
     **FUND JOINT POWERS AUTHORITY,**    )
20                                       )   Hearing Date:   October 17, 2014
                Defendant.               )   Time:           10:00 a.m.
21                                       )   Courtroom:      6

22            PLEASE TAKE NOTICE that on October 17, 2014, at 10:00 a.m., or as soon thereafter

23   as counsel may be heard in Courtroom 6 of the above-referenced Court, located at 450 Golden

24   Gate Avenue, San Francisco, California, Plaintiff Westport Insurance Company ("Westport")

25   will and hereby does move for partial judgment on the pleadings pursuant to Rule 12(c) of the

26   Federal Rules of Civil Procedure as to Counts I-VI and X of the complaint.

27

28

1    In Counts I, V, VI, and X, Westport seeks a declaration that Defendant owes Northern

2    California Relief ("NCR") *some portion* of the defense costs and settlement payments incurred

3    in the underlying lawsuits.  In Counts II-IV, Westport seeks judgment for 100% of the defense

4    costs and settlement payment incurred in connection with the underlying *Cunnane* lawsuit.

5    Specifically, Westport seeks partial judgment in its favor as follows:

6    • Declaring that NCR owes a duty to pay *some portion* of the defense costs and
         settlement payments incurred in connection with the underlying lawsuits
7        (Counts I, V, VI, and X); and

8    • Ordering NCR to reimburse Westport for 100% of the defense costs and the
9        settlement payment made in connection with the claims of one of the students,
         Kristen Cunnane (Counts II, III, and IV).  (The specific amount of such defense
10       costs and the settlement payment will be subject to further proceedings.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ............................................................................... 1

FACTS ESTABLISHED BY THE PLEADINGS ............................................... 2

    A.   NCR'S MEMORANDUM: "BROADEST FORM OF COVERAGE" ................... 2

    B.   THE UNDERLYING LAWSUITS ALLEGE INJURIES OCCURRING IN 2012 ..... 4

    C.   WESTPORT DEFENDS AND INDEMNIFIES THE SCHOOL DISTRICT,
        WHEREAS NCR ABANDONS IT ........................................................ 6

    D.   PRIOR PROCEEDINGS IN THIS ACTION ............................................... 6

APPICABLE LEGAL STANDARD ................................................................... 7

ARGUMENT ................................................................................................... 8

I.   NCR OWES *SOME PORTION* OF THE DEFENSE COSTS AND
    SETTLEMENT PAYMENTS .................................................................... 8

    A.   NCR'S MEMORANDUM COVERS ALLEGATIONS THAT THE SCHOOL DISTRICT
        CAUSED INJURIES DURING EARLY 2012 ........................................... 9

    B.   THE UNDERLYING LAWSUITS TRIGGERED COVERED UNDER NCR'S
        MEMORANDUM ............................................................................ 11

II.  NCR OWES ALL OF THE DEFENSE COSTS AND
    SETTLEMENT PAYMENTS IN THE *CUNNANE* LAWSUIT ................... 13

CONCLUSION .............................................................................................. 15

**BATESCAREY LLP**
191 North Wacker, Suite 2400
Chicago, IL 60606
(312) 762-3100

-i-

Motion for Judgment on the Pleadings and Memorandum of Points and Authorities

## TABLE OF AUTHORITIES

**Cases**

*American Star Ins. Co. v. Ins. Co. of the West*, 232 Cal. App. 3d 1320 (Cal. Ct. App. 4th Dist. 1991) ....................................................................................................................... 15

*Carmen v. San Francisco Unified School Dist.*, 982 F. Supp. 1396 (N.D. Cal. 1997) .............. 8

*Carpenter v. Sullivan*, 2011 WL 9634 (E.D. Cal. Mar. 27, 2011) ............................................. 8

*Doyle v. Raley's, Inc.*, 158 F.3d 1012 (9th Cir. 1998) ............................................................... 7

*In re Novatel Wireless Securities Litig.*, 830 F. Supp. 2d 996 (S.D. Cal. 2011) ....................... 7

*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934 (9th Cir. 2011) ........................................................................................................... 7

*Legal Aid Soc. of Alameda County v. Brennan*, 608 F.2d 1319 (9th Cir. 1979) ....................... 2

*Loughney v. Allstate Ins. Co.*, 465 F. Supp. 2d 1039 (S.D. Cal. 2006) ..................................... 8

*MGIC Indem. Corp v. Weisman*, 803 F.2d 500 (9th Cir. 1986) ............................................... 10

*North Oakland Voters Alliance v. City of Oakland*, 1992 WL 367096 (N.D. Cal. Oct. 6, 1992) .......................................................................................................................................... 8

*Pavlina v. Safeco Ins. Co. of America*, 2012 WL 5412796 (N.D. Cal. Nov. 6, 2012) ............... 8

*Reynolds v. Allstate Ins. Co.*, 855 F. Supp. 2d 989 (N.D. Cal. 2012) ....................................... 8

*Samiere v. San Francisco Unified School Dist.*, 2007 WL 2214039 (N.D. Cal. July 31, 2007) ........................................................................................................................................ 8

*Taylor v. Philip Morris Inc.*, 2003 WL 22416693 (N.D. Cal. Oct. 20, 2003) ......................... 10

*United Services Auto. Ass'n. v. Alaska Ins. Co.*, 94 Cal. App. 4th 638 (Cal. Ct. App. 4th Dist. 2001) ................................................................................................................................ 15

*USF Ins. Co. v. Clarendon America Ins. Co.*, 454 F. Supp. 2d 972 (C.D. Cal. 2006) ............. 15

**Rules**

Fed. R. Civ. P. 10(c) ........................................................................................................... 8, 15

Fed. R. Civ. P. 12(c) ........................................................................................................... 7, 15

Fed. R. Civ. P. 8(b)(6) ............................................................................................................... 2

1

## SUMMARY OF ARGUMENT

2      This case involves a dispute between two insurers of a common insured.  Westport insured

3  the Moraga School District and its administrators (the "School District") in the 1990s.  NCR

4  insured the School District from July 1, 2011 through July 1, 2012.

5      The School District was sued by four former students who alleged that they were sexually

6  molested in the 1990s.  The students also alleged that they suffered additional injuries in 2012,

7  during the period when NCR insured the School District.  These 2012 injuries occurred as a result

8  of the students' discovery, through a series of investigative reports in the *Contra Costa Times*

9  published in early 2012, that the School District allegedly had long known that one of its

10  employees was molesting students but failed to stop him and that the School District engaged in a

11  conspiracy to cover-up its prior failure to act.  The students alleged that, when they discovered in

12  early 2012 that they had been victims of a conspiracy allegedly organized by the School District,

13  they suffered severe emotional distress that was new, separate, and distinct from the injuries they

14  suffered in the 1990s.

15      The allegations of injuries in the 1990s ***and*** in 2012 triggered ***both*** insurers' coverage

16  obligations.  Westport responded by incurring approximately $20 million to defend and eventually

17  to settle all the underlying lawsuits on behalf of the School District.  By contrast, NCR abandoned

18  the School District, refusing to defend it and refusing to contribute a penny toward the settlements,

19  even when given the chance to do so.  The only reason that NCR has ever given for its failure to

20  honor its coverage obligations is that – contrary to the obvious facts – the students did not allege

21  any injuries in 2012.  NCR, in fact, moved to dismiss Westport's complaint in this action on that

22  very ground.  On June 6, 2014, however, this Court rejected NCR's argument, finding that the

23  students did, in fact, allege injuries in 2012.

24      After this Court denied NCR's motion, NCR answered Westport's complaint.  In its

25  answer, NCR admitted all the facts necessary to enter partial judgment in Westport's favor on

26  several counts in this action.  Specifically, NCR's answer permits partial judgment to be

27  entered in Westport's favor on the following:

28

BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
(312) 762-3100

➢ Declaring that NCR owes a duty to pay *some portion* of the defense costs and settlement payments incurred in connection with the underlying lawsuits (Counts I, V, VI, and X); and

➢ Ordering NCR to reimburse Westport for 100% of the defense costs and the settlement payment made in connection with the claims of one of the students, Kristen Cunnane (Counts II, III, and IV).

If the Court enters these rulings, the only remaining issue in this action would be the exact amount of NCR's liability for defense costs and settlement payments incurred in the *Does ## 1-2* lawsuit and the *Doe # 3* lawsuit.

## FACTS ESTABLISHED BY THE PLEADINGS[1]

### A.    NCR's Memorandum:  "Broadest Form of Coverage"

NCR issued a Memorandum of Coverage to the School District which was effective July 1, 2011 to July 1, 2012.  Cmpt. at ¶ 39; Ans. at ¶ 39.  A true and correct copy of the Memorandum is attached as Exhibit K to the complaint.  *Id.*  The limits of liability on the Memorandum were $25 million per occurrence.  Cmpt. at ¶ 39 (and Ex. K thereto at first page); Ans. at ¶ 39.  NCR's Memorandum provides that "it is the intent of [NCR] to provide the broadest form of Coverage to each Covered Party."  Cmpt. at ¶ 40; Ans. at ¶ 40.[2]

The insuring agreement of NCR's Memorandum provides as follows:

**Section II. What is Covered**

**Coverage A – Liability**

---

[1] Because this is a motion for judgment on the pleadings, all factual assertions are supported by references to Westport's complaint ("Cmpt.") (Doc. # 1) and NCR's answer ("Ans.") (Doc. # 39).

[2] In response to certain paragraphs of the complaint, including paragraphs 40 and 41 which simply quoted provisions of the Memorandum, NCR responded "these allegations are legal conclusions regarding plaintiff's interpretation of defendant's liability in this case and do not require admission or denial."  Ans. at ¶¶ 40-41.  Because this is an improper response, these allegations are deemed to be admitted.  *See* Fed. R. Civ. P. 8(b)(6) ("An allegation -- other than one relating to the amount of damages -- is admitted if a responsive pleading is required and the allegation is not denied"); *Legal Aid Soc. of Alameda County v. Brennan*, 608 F.2d 1319, 1334 (9th Cir. 1979) (allegations not denied are treated as admitted).  However, this motion does not depend upon these admissions, since NCR has separately admitted that the quoted terms are, in fact, contained in its Memorandum.  *See* Ans. at ¶ 39 (admitting that Ex. K to complaint is a true and correct copy of Memorandum).

BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
(312) 762-3100

A. The **Authority** will pay **Ultimate Net Loss** in excess of the Member Retained Limit for each **Loss Occurrence**, for which the **Covered Party** shall become obligated to pay for **Damages** as a result of:

1. liability imposed upon the **Covered Party** by law …

Cmpt. at ¶ 41 (and Ex. K thereto at 7); Ans. at ¶ 41; *see* ftnt. 2*, supra.*

The Memorandum contains definitions of certain highlighted terms referenced in this insuring agreement, as follows:

**Covered Party** means:

1. the public agency listed on the Declarations Page [Moraga School District]

2. persons who are past or present … employees … of the **Covered Party**, …

\* \* \*

**Errors and Omissions** means:

1. an actual or alleged misstatement, misleading statement, act, omission by a **Covered Party**, individually or collectively, in the discharge of their duties for the **Covered Party** or any matter claimed against them solely by reason of their being or having been public employees

\* \* \*

**Loss Occurrence** means:

1. For LIABILITY …

ii. an **Error or Omission, Personal Injury** or **Wrongful Acts** by a **Covered Party** which results in **Damages** during the coverage period to which this Memorandum applies which were not expected nor intended by the **Covered Party**;

\* \* \*

**Ultimate Net Loss** means all sums actually paid or payable in cash in the settlement or satisfaction of losses … for which any **Covered Party** is liable either by adjudication or compromise …and includes attorney's fees …

Cmpt. at ¶ 41 (and Ex. K thereto at 23, 25, 27, and 32); Ans. at ¶ 41; *see* ftnt. 2*, supra.*

1   Significant here is the fact that "Loss Occurrence" is defined in terms of "Damages

2   during the coverage period."  This means that the date of damages – not the date of the

3   wrongful act causing those damages – triggers coverage under NCR's Memorandum.  As set

4   forth more fully below, that fact together with the other provisions quoted above establishes

5   that the Memorandum applies if the School District is alleged to have made a misleading

6   statement that results in damages occurring during NCR's coverage period.

7   **B.     The Underlying Lawsuits Allege Injuries Occurring in 2012**

8   Kristen Cunnane[3] and three other former students of the School District (Does ## 1, 2, and

9   3) sued the School District and several of its former administrators in three separate lawsuits in

10  2012 and 2013.  Cmpt. at ¶¶ 14, 23, 30; Ans. at ¶¶ 14, 23, 30.  The students alleged that a School

11  District teacher, Daniel Witters, sexually abused them while they were students in the 1990s.

12  Cmpt. at ¶¶ 15, 24, 31; Ans. at ¶¶ 15, 24, 31.

13

14  They also alleged that, prior to their abuse by Witters, the School District knew that Witters

15  had already sexually abused at least one other student.  After Witters' abuse was revealed in 1996,

16  the School District and its administrators allegedly conspired to conceal their prior knowledge of

17  the abuse so as to prevent his victims and the public from learning of the School District's role in

18  failing to prevent Witters from molesting students.  Cmpt. at ¶¶ 13-17, 26, 28, 31, 33; Ans. at ¶¶

19  13-17, 26, 28, 31, 33.

20  This conspiracy allegedly took the form of misstatements that the School District made after

21  Witters committed suicide and his extensive abuse of multiple students came to light.  Does ## 1

22  and 2, for example, alleged as follows:

23          56.  On December 6, 1996, [the School District's principal] issued
            a statement to the school community, the public, and the media stating that
24          both he and the school district had no knowledge of any prior misconduct
            by Witters and that the first time they heard of any such misconduct was
25          on November 14, 1996, just a few weeks earlier.  That was a blatant
            misrepresentation of the truth …
26

27
    _____
28  [3] Unlike the other students, Ms. Cunnane identified herself in her complaint by name.

58.   … Defendants engaged in a pattern of misrepresenting to all those involved that they acted promptly and in accordance with the law after "first" receiving a complaint about Witters in mid-November 1996.

Cmpt. at ¶ 23 and Ex. D (¶¶ 56, 58) thereto; Ans. at ¶ 23 (admitting that Exhibit D is a true and correct copy of the *Does ## 1-2* complaint).[4]

The students alleged that the cover-up was finally exposed by an investigative journalist who published the details of the conspiracy in early 2012.  Cmpt. at ¶¶ 17-18, 26, 32; Ans. at ¶¶ 17-18, 26, 32.  Significantly, the students alleged that they suffered new emotional distress in 2012 upon learning that their abuse could have been prevented had the School District stopped Witters when it had the chance.  Cmpt. at ¶¶ 18-19, 26, 28, 32-33; Ans. at ¶¶ 18-19; 26, 28, 32-33.

In the underlying lawsuits, the students faced arguments that the statute of limitations barred their claims.  In the *Does ## 1-2* lawsuit and in the *Doe # 3* lawsuit, for example, certain defendants filed demurs based on the statute of limitations.  Cmpt. at ¶¶ 27, 33; Ans. at ¶¶ 27, 33.  In response, the students emphasized that they were seeking damages for their 2012 injuries.  Cmpt. at ¶¶ 18-19, 26, 28, 32-33; Ans. at ¶¶ 18-19; 26, 28, 32-33.  In ruling on these demurs, the California state court agreed, finding that the students could proceed with their lawsuits because they were alleging injuries arising from their discovery of the cover-up in 2012, as follows:

> Here, plaintiffs argue, their discovery in 2012 that defendants had notice of prior incidents of sexual abuse by Witters and failed to take the action that could have prevented the abuse against plaintiffs caused them new emotional distress, in addition to that suffered from the time of the abuse.

Cmpt. at ¶ 29; Ans. at ¶ 29 (admitting that tentative ruling was rendered).

---

[4] *See also* Cmpt. at ¶ 14 and Ex. A (¶¶ 92, 94) thereto ("Defendants intended to deceive Plaintiff and others by concealing the fact that Witters was suspected of sexually abusing other students. … Plaintiff was harmed by Defendants' concealment …"); Ans. at 14 (admitting that Exhibit A is a true and correct copy of the *Cunnane* complaint); and Cmpt. at ¶ 30 and Ex. G (¶ 57) thereto ("District officials lied to the public, to the media, to its students, to the parents of its students, to Plaintiff, and to Plaintiff's parents, all in an effort to try and convince everyone that the District had no prior knowledge of Witters' misconduct."); Ans. at ¶ 30 (admitting that Exhibit G is a true and correct copy of the *Doe # 3* complaint).

In fact, one of the students, Kristen Cunnane, went so far as to explicitly *disavow* that she was seeking damages because of the abuse inflicted upon her in the 1990s.  Instead, Cunnane repeatedly emphasized that she was suing *only* for injuries caused by her discovery of the alleged cover-up in 2012.  Cmpt. at ¶¶ 21-22; Ans. at ¶¶ 21-22.

### C.    Westport Defends and Indemnifies the School District, Whereas NCR Abandons It

Soon after the cover-up first became public, the School District notified both Westport, which insured the School District during the 1990s, and NCR of the underlying lawsuits.  Cmpt. at ¶¶ 42, 44, 46; Ans. ¶¶ 42, 44, 46.  Westport agreed to defend the School District and its three former administrators in all the underlying lawsuits under a reservation of rights.  Cmpt. at ¶ 48; Ans. ¶ 48.

Additionally, on May 7, 2013, Westport funded part of a $2.85 million settlement of the *Cunnane* lawsuit on behalf of the School District and its administrators.  Cmpt. at ¶ 51 (and Ex. R thereto); Ans. ¶ 51 (admitting that a settlement was reached).  On or around September 3, 2013, Westport paid $1.8 million to settle the *Doe # 3* lawsuit on behalf of the School District and its administrators.  Cmpt. at ¶ 54 (and Ex. U thereto); Ans. ¶ 54 (admitting that a settlement was reached).[5]

By contrast, NCR refused to defend the School District or its administrators in any of the underlying lawsuits.  Cmpt. at ¶ 47; Ans. ¶ 47.  Likewise, NCR did not contribute any amounts to the settlements.  Cmpt. at ¶¶ 53, 58-61; Ans. at ¶¶ 53, 58-61.

### D.    Prior Proceedings in This Action

Westport instituted this action on January 21, 2014.  Westport seeks to obtain reimbursement from NCR for the portion of defense costs and settlement payments that arose out of the students' allegations of injuries that occurred during NCR's coverage period in 2012.

---

[5] On June 12, 2014, Westport settled the claims of Does ## 1 and 2 for payments of $7 million to each student.  This fact is not pleaded in Westport's complaint because it post-dated the filing of the complaint.  This fact is not material to the instant motion.

On March 26, 2014, NCR moved to dismiss Westport's complaint.  (Doc. # 20.)  NCR argued that it could not be liable to Westport because the students did not allege injuries occurring during NCR's coverage period.  On June 6, 2014, this Court rejected NCR's argument, finding that the students did, in fact, allege injuries in 2012.  As this Court noted at oral argument, "it's one thing to have one's trust violated by the acts of molestation, but it's a whole separate situation [to discover that the School District was] engaging in a coverup.  That's a – quite a different injury."  *See* Transcript of Proceedings, June 6, 2014 (Doc. # 38) at 4.

The Court then focused on the allegations contained in Does ## 1-2's complaint which alleged that "in addition to suffering emotional distress as a result of the abuse, plaintiff[s] subsequently suffered extreme emotional distress in 2012 when they learned that all of the sexual abuse they endured could have been prevented."  The Court concluded:  "I mean, that's – that's clear.  That's not ambiguous."  *Id.* at 8.  Thus, because it was obvious that the students did, in fact, allege injuries occurring in 2012, the Court denied NCR's motion.  *Id.* at 16; Doc. # 37.

NCR answered the complaint on June 20, 2014.  Doc. #39.  In its answer, NCR admitted all of the statements set forth in the immediately preceding sections of this Memorandum.

## APPICABLE LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that after the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law.  *Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937, n.1 (9th Cir. 2011).  A court must accept the well-pleaded, factual allegations of the nonmoving party as true, and construe the pleadings in the light most favorable to the nonmoving party.  *Doyle v. Raley's, Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998).

In considering a motion for judgment on the pleadings, a court may consider documents attached to the complaint without converting the motion into a motion for summary judgment.  *In re Novatel Wireless Securities Litig.*, 830 F. Supp. 2d 996, 1009 (S.D. Cal. 2011).  This is because

documents submitted with the complaint may be considered as part of the complaint for the purposes of a motion for judgment on the pleadings. *Carpenter v. Sullivan*, 2011 WL 9634 at *1 (E.D. Cal. Mar. 27, 2011); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").  Consistent with this authority, exhibits to the complaint should be treated as part of the complaint, not extrinsic evidence, and are properly considered on a motion for judgment on the pleadings. *Samiere v. San Francisco Unified School Dist.*, 2007 WL 2214039 at *1 (N.D. Cal. July 31, 2007).  Thus, if the pleadings and the attached exhibits establish all material facts necessary for judgment, a court should grant a motion for judgment on the pleadings.

Additionally, the interpretation of an insurance policy is a question of law for the court. *Reynolds v. Allstate Ins. Co.*, 855 F. Supp. 2d 989, 996 (N.D. Cal. 2012).  Accordingly, the interpretation of an insurance policy may be resolved by a motion for judgment on the pleadings. *Pavlina v. Safeco Ins. Co. of America*, 2012 WL 5412796 at *2 (N.D. Cal. Nov. 6, 2012) (interpreting insurance policy when granting motion for judgment on the pleadings); *Loughney v. Allstate Ins. Co.*, 465 F. Supp. 2d 1039, 1041 (S.D. Cal. 2006) (same).

Judgment as to some, but not all, of the counts in a complaint may be appropriate. *Carmen v. San Francisco Unified School Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).  A "party may properly move for partial judgment on the pleadings to further the policy goal of efficient resolution of actions when there are no material facts in dispute." *North Oakland Voters Alliance v. City of Oakland*, 1992 WL 367096 at *2 (N.D. Cal. Oct. 6, 1992).

## ARGUMENT

## I.    NCR Owes *Some Portion* of the Defense Costs and Settlement Payments

Count I (for the *Cunnane* lawsuit), Counts V and VI (for the *Does ## 1-2* lawsuit) and Count X (for the *Doe # 3* lawsuit) seek a declaration that NCR owes some portion of the defense costs and settlement payments incurred in the underlying lawsuits.  NCR's answer admits all the facts necessary to make that declaration.

**A.   NCR's Memorandum Covers Allegations that the
School District Caused Injuries During Early 2012**

NCR has admitted that the document attached as Exhibit K to the complaint is a true and correct copy of the Memorandum.  Cmpt. at ¶ 39; Ans. at ¶ 39.  As set forth above, the Memorandum's insuring agreement provides as follows:

> **Section II. What is Covered**
>
> **Coverage A – Liability**
>
> A. The **Authority** will pay **Ultimate Net Loss** in excess of the Member Retained Limit for each **Loss Occurrence**, for which the **Covered Party** shall become obligated to pay for **Damages** as a result of:
>
> > 1. liability imposed upon the **Covered Party** by law …

Cmpt. at ¶ 41 (and Ex. K thereto at 7); Ans. at ¶ 41; *see* ftnt. 2, *supra*.  Four aspects of this insuring agreement establish that it covered the students' claims asserted in the underlying lawsuits.

First, the School District and its administrators, *i.e.*, the defendants in the students' lawsuits, are covered under the Memorandum.  The Memorandum provides coverage to the "Covered Party." *Id.*  The Memorandum identifies "Moraga School District" as the "Covered Party."  Cmpt. at ¶ 41 (and Ex. K thereto at first page); Ans. at ¶ 41; *see* ftnt. 2, *supra*.  Additionally, the Memorandum defines "Covered Party" to include "employees ... of the Covered Party."  Cmpt. at ¶ 41 (and Ex. K thereto at 23); Ans. at ¶ 41; *see* ftnt. 2, *supra*.  Thus, both the School District and its employees qualify as "Covered Part[ies]" under NCR's Memorandum.

Second, the coverage afford by NCR's Memorandum includes not only damages but also defense costs.  Specifically, the Memorandum provides that NCR will pay "Ultimate Net Loss," which the Memorandum defines to mean both "all sums actually paid … in the settlement … of losses" and also "attorney's fees."  Cmpt. at ¶ 41 (and Ex. K thereto at 7 and 32); Ans. at ¶ 41; *see* ftnt. 2, *supra*.  Thus, if a claim is covered by the Memorandum, NCR must pay both settlements and defense costs incurred in connection with that claim.

Third, NCR's Memorandum responds to injuries occurring during NCR's coverage period of July 1, 2011 to July 1, 2012.  Specifically, the Memorandum provides coverage for "Loss

Occurrences," which is defined in terms of "[d]amages during the coverage period to which this Memorandum applies." Cmpt. at ¶ 41 (and Ex. K thereto at 27); Ans. at ¶ 41; *see* ftnt. 2, *supra*. [6] Thus, the dates of the School District's actions are not relevant to coverage under NCR's Memorandum; it is the date of the resulting damage that triggers coverage.

Finally, NCR's coverage obligations are triggered by *allegations* brought against Covered Parties. Specifically, as stated above, the Memorandum provides coverage for "Loss Occurrences." Cmpt. at ¶ 41 (and Ex. K thereto at 7); Ans. at ¶ 41; *see* ftnt. 2, *supra*. "Loss Occurrence" is defined to include "Errors and Omissions." Cmpt. at ¶ 41 (and Ex. K thereto at 27); Ans. at ¶ 41; *see* ftnt. 2, *supra*. "Errors and Omissions" is defined to mean "an actual or *alleged* misstatement [or] misleading statement." Cmpt. at ¶ 41 (and Ex. K thereto at 25 (emphasis added)); Ans. at ¶ 41; *see* ftnt. 2, *supra*.

The fact that NCR provides coverage based on *allegations* of misstatements is key. It is not relevant whether those allegations were proven to be true. The only relevant consideration is whether the students *alleged* that they suffered injuries in the first half of 2012.

Based on these four aspects of the insuring agreement, the Court can and should declare that NCR's insurance obligations were triggered if the students alleged that the School District and/or its administrators made misstatements that caused injuries to the students between July 1, 2011 and July 1, 2012. If so, NCR had an obligation to cover the School District and its administrators in the underlying lawsuits, and NCR is liable to reimburse *some portion* of the defense costs and indemnity payments that Westport paid in connection with those underlying lawsuits.

---

[6] *See also* NCR's Motion to Dismiss (Doc. # 20) at 7 ("NCR's Memorandum of Coverage clearly sets forth that it is only responsible for damages that occurred during the coverage period") (emphasis in NCR's original); at 8 ("California courts have long recognized that coverage in the context of occurrence-based liability policies is established at the time the complaining party *actually damaged*") (emphasis in NCR's original). When deciding a motion for judgment on the pleadings, a court may take judicial notice of pleadings filed in the case. *Taylor v. Philip Morris Inc.*, 2003 WL 22416693 at *1 (N.D. Cal. Oct. 20, 2003). *See also MGIC Indem. Corp v. Weisman*, 803 F.2d 500 (9th Cir. 1986) (taking judicial notice of allegations made in a motion to dismiss and a supporting memorandum).

**B.     The Underlying Lawsuits Triggered Covered Under NCR's Memorandum**

As NCR admitted in its answer, the students made precisely the allegations necessary to trigger coverage under NCR's Memorandum.  Specifically, NCR has admitted that Exhibit A to Westport's complaint is a true and correct copy of the complaint filed in the *Cunnane* lawsuit.  Cmpt. at ¶ 14; Ans. at ¶ 14.  The *Cunnane* complaint alleged as follows:

> 57.  This action is predicated on the District's letters and internal memoranda, previously concealed by the District, and which were uncovered only after a newspaper investigation earlier this year (2012). Until that time, despite Ms. Cunnane's reasonable and diligent investigation, she did not suspect, and had no reasonable basis to suspect, that the Defendants were on notice of allegations of sexual abuse at the School for years, but failed to report such abuse to authorities as they were required to do under the law.  The cause of action against Defendants therefore accrued, for the first time in March 2012, and this action is timely.

> *          *          *

> 94.  [Cunnane] was harmed by Defendants' concealment of Witters' suspected sexual abuse.

> 95.  Defendants' concealment of suspected sexual abuse by Witters was a substantial factor in causing harm to [Cunnane].

> 96.  As a direct and proximate result of Defendants' fraudulent concealment, [Cunnane] has suffered damages in an amount to be proven at trial.

Cmpt. at ¶¶ 18-19.  NCR has admitted that these were the allegations in Cunnane's complaint.  Ans. at ¶¶ 18-19.

Similarly, NCR has admitted that Exhibit D to Westport's complaint is a true and correct copy of the complaint filed in the *Does ## 1-2* lawsuit.  The *Does ## 1-2* complaint alleged as follows:

> 67.      On May 25, 2012, the Contra Costa Times published its in-depth investigative story that set forth ROE #1's [the School District's] prior knowledge of Witters' sexual abuse and ROE #1's subsequent cover-up of that knowledge.  Soon thereafter, Jane Doe #1 and Jane Doe #2 read the article.  This was the first time said Plaintiffs ever suspected wrongdoing by [the School District and its administrators].  …

> 82.     … Plaintiffs subsequently suffered extreme and severe emotional distress in 2012 when they learned that all of the sexual abuse they endured could have been prevented if Defendants had acted in the manner required by law after receiving Victim A's [an earlier victim] letter in June 1994.

Cmpt. at ¶ 26. NCR has admitted that these were the allegations in the *Does ## 1-2* complaint. Ans. at ¶ 26.

Finally, NCR has admitted that Exhibit G to Westport's complaint is a true and correct copy of the complaint filed in the *Doe # 3* lawsuit, and NCR has further admitted that Exhibit H is a true and correct copy of another pleading that Doe # 3 filed in that lawsuit. Those documents alleged:

> 71.     Defendants' motivation to, and ultimate success at, concealing their knowledge of Witters' prior acts of sexual abuse at the School caused Plaintiff and other victims to discover the truth about each Defendant's role in the abuse only very recently.
>
> 72.     Due to Plaintiff's delayed discovery of Defendants' role and liability in the sexual abuse she suffered, Plaintiff's causes of action against Defendants accrued no earlier than May 25, 2012 – the day The Contra Costa Times published their article unearthing the information contained in documents buried by the District.
>
> *          *          *
>
> Here, Plaintiff now suffers additional and different harm arising from the recent discovery that Defendants including Walters were aware of multiple allegations of illegal conduct by Witters, chose not to report the abuse as required by law, and actively concealed their prior knowledge of his behavior.

Cmpt. at ¶¶ 32-33. NCR has admitted that these were the allegations that Doe # 3 asserted in that underlying lawsuit. Ans. at ¶¶ 32-33.

Thus, based on the admissions contained in NCR's answer, NCR's Memorandum was triggered by the students' underlying lawsuits. The pleadings establish that NCR had an obligation to pay whatever portion of the defense and indemnity costs that related to allegations of injuries occurring in 2012. For that reason, Westport is entitled to the declaration sought in Counts I, V, VI, and X that NCR is obligated to pay at least some portion of the costs to defend and to settle the underlying lawsuits.

BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
(312) 762-3100

## II.    NCR Owes All of the Defense Costs and Settlement Payments in the *Cunnane* Lawsuit

Count II (equitable subrogation), Count III (contractual subrogation), and Count IV (equitable contribution) each seeks the same relief:  an award of damages against NCR representing NCR's share of the defense and settlement costs incurred in connection with the *Cunnane* lawsuit. Thus, if the pleadings establish the portion of Cunnane's damages arising from her 1990s injuries (which would be Westport's responsibility) compared to her 2012 injuries (which would be NCR's responsibility), judgment on these causes of actions would be appropriate at this stage.

The pleadings establish that Cunnane unequivocally renounced any damages on account of the molestations that occurred during the 1990s.  Instead, Cunnane affirmatively argued that the *only* injuries for which she was seeking any recovery were the injuries she sustained in early 2012 upon her discovery of the School District's alleged conspiracy.  Specifically, NCR has admitted that Cunnane filed a pleading in which she alleged as follows:

> *This case arises from the revelation, made for the first time last year [2012], that Ms. Cunnane was betrayed by an entirely different set of trusted and respected authority figures* -- the administration of … the Moraga School District ("District").
>
> *            *            *
>
> Defendants' demurrer misidentifies the accrual "anchor" as the last act of molestation committed by [a School District teacher] against Ms. Cunnane, because they incorrectly characterize Ms. Cunnane's action as one for "childhood sexual molestation."  … But … *it is not the abuse committed by Witters and [another teacher] that gives rise to Ms. Cunnane's causes of action here.*  Rather, the wrongful acts at issue in this lawsuit are defendants' own outrageous, reckless and negligent conduct, as well as their continuous efforts, from the early 1990s *through 2012*, to fraudulently conceal the fact of Witters' criminal actions and, following Witters' suicide, to conceal that they had contemporaneous knowledge of those actions.  And it is those acts and omissions that give rise to the accrual of Ms. Cunnane's causes of action.  Quite simply, Ms. Cunnane had no basis until March 2012, at the earliest, to suspect the defendants had committed the negligent and fraudulent type of wrongdoing alleged in the complaint.

Cmpt. at ¶ 21 (emphasis added); Ans. at ¶ 21.

BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
(312) 762-3100

As if that was not clear enough, NCR has further admitted that Cunnane reiterated in open court that she was not seeking a penny in damages for the 1990s molestations, but was instead seeking to recover solely because of the injuries she sustained upon discovering the conspiracy during NCR's coverage period, as follows:

> *[I]t is not the sexual abuse that Ms. Cunnane is suing for.  As much as defendant would like to make that the accrual anchor, that is not what this case is about*.
>
> This case concerns defendant's negligent, intentional and fraudulent cover-up that there was a pedophile with the Moraga School District, and yet they made a conscious and purposeful decision to do nothing about it.  And as the complaint alleges, it is the fraudulent concealment that gives rise to the cause of action. … [This] action is predicated on the District's letters and internal memoranda previously concealed by the District, and which were uncovered only after a newspaper investigation earlier this year [2012]. … *This case isn't about the molestation.  It's an entirely separate action.  And, it's about the fraudulent concealment*.

Cmpt. at ¶ 22 (emphasis added); Ans. at ¶ 22.

Westport's obligations are limited to paying for claims that seek damages on account of injuries taking place during the 1990s when its policies were in effect.  NCR is liable for claims seeking damages on account of injuries taking place in the first part of 2012 when its Memorandum was in effect.  As NCR's answer admitted, Cunnane insisted that the *only* damages she sought were damages that flowed from her discovery of the cover-up in 2012, *i.e.*, during NCR's coverage period.  Accordingly, the pleadings establish that NCR -- and not Westport -- should have paid to defend and settle the *Cunnane* lawsuit on behalf of the School District.  Thus, the Court should enter judgment on Counts II, III, and IV that NCR must reimburse Westport for all defense costs and indemnity payments that Westport made in connection with the *Cunnane* matter.[7]

---

[7] Although the complaint alleges that the *Cunnane* action settled for $2.85 million (Cmpt. at ¶ 51), the compliant does not set forth the exact amount of Westport's contribution to that settlement, nor does it set forth the amount of defense costs Westport incurred.  (Those amounts are a $2.5 million settlement payment and approximately $300,000 in defense costs.)  Thus, the partial judgment on these Counts at this time should simply be a declaration that Westport is entitled to judgment in amounts to be proven.  The prove-up of these amounts should be an administrative matter, as NCR has waived any right it may have had to challenge the reasonableness of the amounts incurred, by virtue of its failure to defend.  *USF Ins. Co. v.*

## CONCLUSION

The pleadings establish that NCR has an obligation to pay for at least *some portion* of the defense costs and settlement payments incurred in the underlying lawsuits.  For that reason, the Court can and should enter judgment on Counts I, V, VI, and X by issuing a declaration to that effect.  Issuing that declaration will greatly streamline this case by moving it beyond the question of *whether* NCR must pay its fair share of the defense costs and settlement payments to *how much* that fair share should be.

Additionally, the pleadings further establish that Cunnane limited her claimed damages only to the injuries she sustained in early 2012 upon her discovery of the conspiracy.  Because NCR is solely liable for all allegations of injuries occurring in 2012, the precise amount of NCR's obligation in connection with the *Cunnane* lawsuit is 100%.  Accordingly, the Court should enter judgment on Counts II, III and IV.

If the Court grants this motion, the issue of the existence of NCR's liability and the precise amount of that liability relating to the *Cunnane* lawsuit will be resolved.  The parties would then be able to focus, through settlement negotiations or otherwise, on NCR's appropriate share of the much larger settlements and defense costs associated with the underlying *Doe* lawsuits.

Dated:  August 26, 2014.

BATESCAREY LLP

By:  s/ Mark G. Sheridan
Adam H. Fleischer (*pro hac vice*)
Mark G. Sheridan (*pro hac vice*)
Michael H. Passman (*pro hac vice*)
191 North Wacker, Suite 2400
Chicago, IL 60606
(312) 762-3100
afleischer@batescarey.com

*Clarendon America Ins. Co.*, 452 F. Supp. 2d 972, 1004, n. 94 (C.D. Cal. 2006) (insurer who refuses to join in a coinsurer's defense of a covered claim waives the right to challenge the reasonableness of the coinsurer's payments made in connection with that claim); *United Services Auto. Ass'n. v. Alaska Ins. Co.*, 94 Cal. App. 4th 638, 644 (Cal. Ct. App. 4th Dist. 2001) (same); *American Star Ins. Co. v. Ins. Co. of the West*, 232 Cal. App. 3d 1320, 1332-33 (Cal. Ct. App. 4th Dist. 1991) (same).

1
    msheridan@batescarey.com
    mpassman@batescarey.com

2

3
    Michael K. Johnson (SBN 130193)
    LEWIS BRISBOIS BISGAARD & SMITH LLP
    333 Bush Street, Suite 1100

4
    San Francisco, CA 94104
    (415) 362-2580

5
    michael.johnson@lewisbrisbois.com

6
    Attorneys for Plaintiff
    Westport Insurance Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Mark Sheridan, an attorney, certifies that a copy of the foregoing motion was served on the following attorney of record on August 28, 2014 via the court's ECF system.

Dennis J. Walsh
Walsh & Associates
16633 Ventura Boulevard
Suite 800
Encino, CA 91436

s/ Mark G. Sheridan

1283506